UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDY J. NORRIS,

   *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

   *Defendant*.
_____/

CASE NO. 17-cv-11051
DISTRICT JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 14, 17)**

**I. REPORT**

**A. Introduction and Procedural History**

  This is an action for judicial review of a final decision by the Commissioner of Social Security denying Plaintiff Andy Norris's claim for disability benefits under the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq*., and Supplemental Security Income Benefits ("SSI") under Title XVI, 42 U.S.C. §§ 1381-1383f. (Doc. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge. (Doc. 4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 17).

  Plaintiff was born on October 25, 1963, making him 41 years old on the alleged onset date of January 1, 2005. (Doc. 14 at ID 316-17). He was last insured on June 30, 2009. (Tr. 58). Plaintiff filed both a DIB and an SSI claim in February 2014 (Tr. 120-25,

126-32).[1] Although the parties agree that Plaintiff's DIB claim was denied on May 28, 2014, (Doc. 14 at ID 316); (Doc. 17 at ID 340, n.4); (Tr. 73-76), the date on which Plaintiff's SSI claim was denied is another matter. Based on Plaintiff's recitation of the case's procedural history, he seems to believe the initial denial of his SSI application fell on the same date as that of his DIB application: May 28, 2014. (Doc. 14 at ID 316). He offers no citation to the record in support of this contention; in fact, the record does not include any evidence that an initial decision was ever rendered on his SSI claim. Defendant, on the other hand, asserts that Plaintiff's SSI claim was denied on April 8, 2014, (Doc. 17 at ID 339), and attaches as proof a copy of a Notice of Disapproved Claim that does not appear in the administrative record. (Doc. 17, Ex. A).

Regardless, Plaintiff filed a request for a hearing on June 27, 2014, (Tr. 77-78), and an administrative hearing on his DIB claim was held on October 15, 2015, before ALJ Ena Weathers. (Tr. 32-57). On November 19, 2015, the ALJ issued a decision that Plaintiff had not been disabled between his alleged onset date and his date last insured—in other words, as both parties agree, the ALJ ruled only on Plaintiff's DIB claim. (Tr. 14-27). Plaintiff filed a timely request for review of that decision, which the Appeals Council denied. (Tr. 1-6). This action followed.

**B. Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted to

---

[1] Plaintiff's brief states that he filed both applications on March 24, 2014. (Doc. 14 at ID 316). His own citation to the record, however, indicates he filed in February 2014.

determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

3

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc.*

4

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered him unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ concluded that Plaintiff was not disabled under the Act between his original alleged onset date of January 1, 2005, and his last insured date of June 30, 2009. (Tr. 14-27). To begin, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant period. (Tr. 19). Next, the ALJ determined that through the date last insured, Plaintiff had the following severe impairments: back, hip, and leg pain; headache; chronic obstructive pulmonary disease (COPD); and obesity. (Tr. 20). The ALJ then concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (Tr. 20-21). As for Plaintiff's residual functional capacity ("RFC"), the ALJ concluded that through Plaintiff's date last insured, he had the RFC

> To perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; and can occasionally stoop, crouch, and crawl; the claimant can perform tasks

5

without strict production demands; avoid concentrated exposure to fumes, gases, dusts, pollutants and vibration; and, the claimant needs the ability to change from standing to seated position or vice versa for 1-2 minutes every hour to two hours without interference with work product.

(Tr. 21). Finally, the ALJ found that through the date last insured, Plaintiff was capable of performing his past relevant work as a pastor—and that, in the alternative, other jobs existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 25-26).

**E. Administrative Record**

**1. Medical Evidence**

The Court has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing his medical history here, the Court will make reference and provide citations to the record as necessary in its discussion of the parties' arguments.

**2. Application Reports and Administrative Hearing**

**a. Plaintiff's Testimony at the Administrative Hearing[2]**

On October 15, 2015, ALJ Ena Weathers presided over an administrative hearing, (Tr. 32-56), at which Plaintiff testified, (Tr. 37-50). The ALJ began by asking Plaintiff some preliminary questions, including establishing his height as 5 feet, 11 inches, and his weight as 305 pounds. (Tr. 38). Plaintiff testified that he lived with his wife in a one-story home. (Tr. 38). He completed the seventh grade in school and went on to get his GED; he also completed a vocational college course on machinist skills in 1989. (Tr. 39-40). At the

---

[2] I note that the record does not include a function report from Plaintiff. Nothing in the record suggests to me that a function report was mistakenly excluded.

6

time of the hearing, he earned about $200 a month from his church by working as an assistant pastor, teaching Bible study. (Tr. 39). Besides working as an assistant pastor, Plaintiff had in the past held "temporary jobs" like "light assembly" and "blueprint reading" "in different places." (*Id.*).

His average day involved doing "not too much." (Tr. 44). For example, on days where he conducted Bible study, he would "study just a little bit and head to church." (Tr. 44). Breakfast, lunch, and dinner were a regular part of his routine; he could "make oatmeal and stuff like that," but his wife did "all the cooking." (*Id.*). He tried to help his wife with household chores, such as vacuuming, but he complained that "[t]he way the pain hit me, sweat just starts pouring off me." (*Id.*). He accompanied his wife grocery shopping, holding on to the cart for support, for up to thirty minutes. (Tr. 45). If he was not taking medication, he would drive once or twice a week—in fact, he drove himself to the hearing—but his wife did "most of the driving." (*Id.*). He explained he would not drive after taking Norco because it made him dizzy. (Tr. 49).

Plaintiff complained of problems both standing and sitting: He could stand for fifteen to twenty minutes and could sit for about thirty minutes "[i]f I shift my weight." (Tr. 45). He estimated he could walk around the block. (Tr. 45). Further, he testified he was unable to bend over and touch the floor; nor could he crouch, crawl, or kneel. (Tr. 47). He could carry a gallon of milk, "and that's about it." (*Id.*).

Plaintiff felt he was unable to work because of the pain in his lower bad, hips, and legs, which he described as a seven out of ten at the time of the hearing—"like someone is twisting my bones." (Tr. 41). He believed his weight was exacerbating his knee and back

7

pain. (Tr. 50). Massage provided some relief, as did ice packs, pain medication, and elevating his legs. (Tr. 42-43, 48). His doctor had administered injections in his lower back several times, but the relief "only lasted a day or two" and Plaintiff disliked having "a giant needle in my back." (Tr. 47-48).

He testified that he has a lot of trouble sleeping and that his wife has witnessed him stop breathing seven or eight times in a night. (Tr. 44). Financial obstacles kept him from being tested for sleep apnea or related issues. (*Id.* at 44-45). Additionally, he believed his Flexeril made him "more tired than I went to bed." (Tr. 47).

### b. The Vocational Expert's Testimony at the Administrative Hearing

VE Elizabeth Pasakowski also testified at the administrative hearing. (Tr. 50). She began by summarizing Plaintiff's past work: pastor or clergy member (light, skilled work), truck driver (medium, semiskilled work), and assembler (light, unskilled work). (Tr. 51).

The ALJ proposed her first hypothetical:

> Let's assume a hypothetical individual with the past jobs you just described. Further assume that this individual is able to work at the light level of exertion, and is unable to climb ladders, ropes or scaffolds. Can occasionally stoop, crouch, crawl and climb ramps and stairs. Can perform tasks without strict production demands and would need to avoid concentrated exposure to fumes, gases, dusts, pollutants and vibration.

(Tr. 51-52).

The VE testified that this hypothetical person would be able to perform Plaintiff's past work as a pastor and as an assembler. (Tr. 52). The ALJ's posed follow-up hypothetical centering on a person with the same limitations as well as "the ability to change from a standing to a seated position or vice versa from one to two minutes every hour to two hours,

8

without interference with work product." (Tr. 52). This person would also be able to perform Plaintiff's past work as a pastor and as an assembler, according to the VE. (Tr. 52). He could also perform additional jobs including assembler (122,000 nationally), packer (98,000 nationally) and cashier (84,000 nationally). (Tr. 52-53).

The VE noted that the Dictionary of Occupational Titles ("DOT") does not address a sit/stand option, but assured the ALJ that "it's well within the description of light work, and that's based on my experience." (Tr. 52). Otherwise, she asserted, her testimony was consistent with the DOT. (Tr. 53).

Finally, the ALJ devised a third hypothetical: She asked the VE to assume a person with the same limitations as previously discussed, "but the person would be off task 20 percent of the workday, excluding normal breaks, due to pain, lack of concentration, and the effects of medication." (Tr. 53). The VE answered that a person with those limitations would be unable to perform Plaintiff's past work or any other work, "based on my experience, as the DOT doesn't discuss that off task." (Tr. 53).

Next, Plaintiff took over questioning the VE. (Tr. 53). In response to Plaintiff's questions, the VE explained that a person could be absent once or twice per month and still retain full-time work, following a sixty-day "break-in period." (Tr. 53). Plaintiff asked whether a person would be able to work the jobs the VE had named if he was "not able to work 8 hours a day, 5 days a week, 40 hours per day [sic]." (Tr. 53-54). The VE replied that the person could still work as a pastor, as that usually did not require forty hours a week; a pastor might work anywhere from ten hours a week to thirty-five, up to sixty or seventy for "a huge parish." (Tr. 53-54).

9

Plaintiff then asked the VE to consider what result would occur if in the second hypothetical the sit/stand option were at will, "and if he was sitting for 30 minutes and standing for 15." (Tr. 54). The VE answered that with that change, the person could not perform Plaintiff's past work as an assembler, but could still work as a pastor. (Tr. 54). Further, the availability of the additional jobs the VE had named would be reduced to 40,000 assembler jobs nationally and 32,000 packer jobs nationally. (Tr. 54). Cashier work would be precluded. (Tr. 54).

Continuing his questioning, Plaintiff inquired about a person "limited to . . . ten pounds rarely and less than ten pounds occasionally"; the VE responded that such a limitation would preclude light work. (Tr. 54). Finally, the VE described, at Plaintiff's questioning, how a pastor could take unscheduled breaks "pretty much off and on as needed," while it would be "fairly typical" of other work to allow for bathroom breaks "[a] couple times a day." (Tr. 54-55). The assembler, packer, and cashier positions would not allow for ten- to fifteen-minute breaks every thirty minutes. (Tr. 55).

**F. Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an

impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case

11

record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the person's RFC, or the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record

12

and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists; the ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

A claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment." 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "[O]bjective evidence of the pain itself" is not required. *Duncan v. Sec'y of Health & Human Servs.*,

13

801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i) [D]aily activities;
(ii) The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v) Treatment, other than medication, . . . received for relief of . . . pain;
(vi) Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing his RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he can still do despite his limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

**G. Analysis**

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ erred at Step Four by finding that Plaintiff's previous work as a pastor was past relevant work, and (2) that the ALJ failed to evaluate his claim for SSI. (Doc. 14).

**1. Any error the ALJ committed at Step Four by finding that Plaintiff had past relevant work as a pastor was harmless.**

I turn first to Plaintiff's sole allegation of error regarding his DIB claim—namely, that the ALJ erred at Step Four in finding that Plaintiff had past relevant work as a pastor. (Doc. 14 at ID 326-27) (citing Tr. 25). Past relevant work is defined as work from the past fifteen years that was substantial gainful activity and lasted long enough for the person to learn to do it. 20 C.F.R. § 404.1560(b)(1). Plaintiff argues that his work as a pastor did not rise to the level of substantial gainful activity. (Doc. 14 at ID 326-27).

Defendant does not dispute Plaintiff's allegation of error itself, but simply asserts that any error was harmless because the ALJ went on to make an alternative Step Five finding. (Doc. 17 at 342) (citing Tr. 25-27). As district courts in the Sixth Circuit routinely hold, "[e]rrors at step four are considered harmless when the ALJ makes an alternative determination at step five, and finds that a claimant can perform work that exists in significant numbers in the national economy." *Gaskin v. Comm'r of Soc. Sec.*, No. 14-10859, 2015 WL 268335, *4 (E.D. Mich. Jan. 21, 2015); *see also, e.g.*, *Mabrey v. Comm'r of Soc. Sec.*, No. 1:13-cv-555; 2015 WL 556435 at *5 (S.D. Ohio Feb. 10, 2015); *Wilson v. Astrue*, No. 07-99-GWU, 2008 WL 215225, at *4 (E.D. Ky. Jan. 23, 2008). Here, the ALJ made an alternative determination at Step Five that Plaintiff would be able to perform

15

other jobs existing in significant numbers in the national economy, including assembler (122,000 jobs nationally), packer (98,000 jobs nationally), and cashier (84,000 jobs nationally). (Tr. 26).

Since Plaintiff has not so much as mentioned the ALJ's alternative finding at Step Five, he has waived any potential challenge to its validity. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief . . . are waived."). I therefore suggest that any error the ALJ committed at Step Four was harmless and does not warrant remand.

**2. The Court lacks subject-matter jurisdiction to rule on Plaintiff's SSI claim.**

It is now uncontested that at Plaintiff's administrative hearing, the ALJ decided only Plaintiff's DIB application, and not his SSI application. (Docs. 14, 17). The question before the Court, then, is whether the ALJ erred in failing to evaluate Plaintiff's SSI claim. First, however, there is the threshold question of whether the Court has subject-matter jurisdiction to hear his claim; a district court may only review a final decision of the Commissioner made after a hearing. 42 U.S.C. § 405(g).

Plaintiff appears to have completed all the requirements for his initial SSI application to be considered a claim for benefits. (Doc. 14 at ID 324). Yet the administrative record contains no determination for his SSI application; instead, Defendant has attached to its brief the Notice of Disapproved Claim it sent to Plaintiff regarding his application for SSI. (Doc. 17, Exhibit A). The notice lays out that Plaintiff had sixty-five days from the initial determination date of April 8, 2014, to file an appeal in writing. (*Id.*). The only documentation in the record that Plaintiff appealed an initial determination does

not indicate which claim or claims he was appealing, (Tr. 77-78)—and, as Defendant points out, even if Plaintiff's request to appeal were construed to include his SSI claim, it came too late. (Doc. 17 at ID 340, n.3). The deadline for Plaintiff to appeal his SSI claim fell on June 13, 2014. (Doc. 17 at ID 340). Plaintiff filed his hearing request on June 27, 2014. (Tr. 77-78).

Plaintiff does not attempt to argue that he never received the notice of initial denial of his SSI claim. Instead, Plaintiff asserts that his SSI claim was denied on the same day as his DIB claim, May 28, 2014. (Doc. 14 at ID 316). He presents no evidence in support of this assertion.

The Notice of Hearing sent to Plaintiff stated that the sole issue before the ALJ would be Plaintiff's DIB claim, and instructed that if he disagreed with the listed issues, he "must tell me in writing why you disagree . . . . as soon as possible." (Tr. 92-109). Plaintiff did not register any disagreement in writing. *See Freeman v. Comm'r of Soc. Sec.*, No. 1:14-cv-212, 2015 WL 710916, at *7 (N.D. Ohio Feb. 18, 2015) (holding ALJ did not err in failing to consider plaintiff's SSI claim where plaintiff received Notice of Hearing stating her DIB claim was the sole issue, and plaintiff did not object); *Syens v. Comm'r of Soc. Sec.*, No: 8:15-cv-1142-T-JSS, 2016 WL 4409344, at *6-7 (M.D. Fla. Aug. 19, 2015) (holding plaintiff did not exhaust his administrative remedies as to his SSI claim in part because plaintiff did not object to Notice of Hearing stating his DIB claim was the sole issue).

Plaintiff's attorney did mention Plaintiff's SSI application at his administrative hearing, though he stopped short of explicitly arguing that the hearing should also cover

Plaintiff's SSI claim. (Tr. 36). *Cf. Syens*, 2016 WL 4409344, at *6. At the outset of the hearing, Plaintiff's attorney told the ALJ that he "saw this as a Title II [DIB] case," but had also noticed an SSI application in the record. (Tr. 36). The ALJ responded: "Well, they'll work that out later. The issue today is whether or not he's disabled. Whether he qualifies for Title XVI. [sic] For some reason they must have determined that they had income that was preventing the Title XVI as well as the Title II. So, we'll figure that out later." (Tr. 36). But it does not appear the ALJ ever addressed the fate of Plaintiff's SSI application. No mention of it appears in the ALJ's decision. (Tr. 14-27).

Plaintiff challenged the ALJ's failure to address his SSI claim, among other issues, in his request to appeal to the AC. (Tr. 195-98). *Cf. Gilkerson v. Comm'r of Soc. Sec.*, 2012 WL 381706, at *6 (ALJ did not err in failing to consider Plaintiff's SSI claim where Plaintiff did not challenge the ALJ's failure at the AC level) and *Syens*, at *6 (ALJ did not err in failing to consider plaintiff's SSI claim where plaintiff did not raise the issue in his first brief to the Appeals Council or appeal to the district court). The AC denied Plaintiff's request for review. (Tr. 1-4).

In short, while Plaintiff has made some attempt to resuscitate his SSI claim, he must ultimately face the stark statutory reality: The Social Security Act dictates that a court may only review a final decision of the Commissioner made after a hearing. 42 U.S.C. § 405(g); *also, e.g.*, *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975); *Morales v. Astrue*, No. 2:11-cv-1356-FtM-SPC, 2012 WL 1252682, at *6 (M.D. Fla. April 13, 2012); *Smith v. Comm'r of Soc. Sec.*, No. 09-26, 2010 WL 5464811, at *3 (S.D. Ohio Dec. 30, 2010). The parties

agree—and the record confirms—that there was no hearing on Plaintiff's SSI claim. I therefore suggest the Court lacks subject-matter jurisdiction to decide it.

## II. **RECOMMENDATION**

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 14), be **DENIED**, the Commissioner's Motion for Summary Judgment, (Doc. 17), be **GRANTED**, and this case be **DISMISSED**.

## III. **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

19

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 20, 2018                     S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 20, 2018                      By s/Kristen Castaneda
                                             Case Manager